UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JONATHAN LEE THOMAS,

     Plaintiff,

v.                                   Case No. 3:21cv1906-LC-HTC

ESCAMBIA COUNTY JAIL,
ESCAMBIA COUNTY BOARD
 OF COUNTY COMMISSIONERS,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff Jonathan Lee Thomas's second amended complaint under 42 U.S.C. § 1983, alleging Defendants' failure to provide him a Hebrew text violated the Free Exercise Clause, Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et. seq. ("RLUIPA"), and Equal Protection Clause. ECF Doc. 9. The matter was referred to the undersigned Magistrate Judge for preliminary screening and report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). Upon review, the undersigned recommends this action be DISMISSED for failure to exhaust and failure to state a claim.

## I.    PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff, a pretrial detainee, currently incarcerated at the Escambia County Jail (the "Jail") initially filed this action on or about November 1, 2021, against the Escambia County Board of County Commissioners ("ECBCC").[1] ECF Doc. 1. The Court screened Plaintiff's complaint and found it to be deficient for several reasons, including failing to identify a municipal policy or custom against the ECBCC, failing to allege a substantial burden on his religious exercise, and failing to state facts sufficient to show intentional discrimination. ECF Doc. 8. Because Plaintiff is proceeding *pro se,* rather than recommend dismissal, the Court allowed Plaintiff an opportunity to amend the complaint to cure the pleading deficiencies.

On or about January 20, 2022, Plaintiff filed a second amended complaint.[2] ECF Doc. 9. While asserting the same claims, Plaintiff added new facts, some of which were based on conduct that occurred *after* the original complaint was filed. Plaintiff also names the following new defendants: William Powell, Chief of Corrections; Jerry Champion, O.I.C. of Internal Affairs at the Jail; and Chaplain Reginald Benjamin, and, as instructed by the Court, omitted the Jail as a defendant. Plaintiff sues Defendants Powell, Champion, and the Chaplain in their official

---

[1] Along with the ECBCC, Plaintiff also initially sued the Escambia County Jail, but the Court informed Plaintiff in its deficiency Order, ECF Doc. 7, that the Jail is not a legal entity and, thus is not a proper defendant.

[2] Plaintiff also filed a first amended complaint, ECF Doc. 8, which the Court did not screen because, just a week later, Plaintiff filed, the instant second amended complaint.

Case No. 3:21cv1906-LC-HTC

capacities only.  The following facts are taken from Plaintiff's second amended complaint and are accepted as true for the purposes of this report and recommendation.

On or about September 20, 2021, Plaintiff began requesting a Hebrew text to correspond with his Hebrewism faith from the Chaplain's office.  ECF Doc. 9 at ¶1. Plaintiff is "a Hebrew and classified as such in the classification records of the Jail." *Id*.  Plaintiff's "faith studies are grounded in the 'Ancient Hebraic Religion,' a faith [Plaintiff] is a 'strict[ly] adherent' to."  *Id*.  Plaintiff's "faith, culture, way of life, existence, [and] covenant promise of eternal life is based on the name Yahweh the Father and his son Yeshua Hamashiach."  *Id*.

To Hebrews, "nothing is more important" than "the word of Yahweh" because the text is the "final authority" of their lives, and they "consider it sacred/holy and 'ALIVE.'"  *Id*. at ¶2.  According to Plaintiff, Yahweh the Elohim "speaks and guides [Hebrews] through 'his word'" as "his word is a lamp unto [their] feet and a light onto [their] path (Psalms 119:105)."  *Id*.  Hebrews "are commanded to 'study'" to show [themselves] approved unto Yahweh," (2 Timothy 2:15), to "meditate in it day and night for doing so will make [their] way prosperous and [they] will have good success (Joshua 1:8)."  *Id*.

Plaintiff alleges the Jail, which the ECBCC is over, "offers literal text and tablet accessibility reading of texts, studies, videos, commentary for numerous faiths

such as Christianity, Muslim, Judaism, Jehovah's Witness, Latter Day Saints, Orthodox, Hindu, Buddist (sic), Wiccan Bible, Poetic Edda, Holy (sic), Runes, (sic), etc.," but, "nothing at all for Hebrews." ECF Doc. 9 at ¶3. According to Plaintiff, this "displays a violation of 'the Hebrew' First Amendment right to exercise as well as a violation of RLUIPA by deliberate indifference and/or disregard." *Id*. The ECBCC "has an 'Administrative Order' policy on faith-based programs and services that offers nothing for the Hebrews, practicing Hebrewism by deliberate discrimination, and or disregard, an act that is unconstitutional and violates the Equal Protection Clause . . . by granting other faiths in the Jail normally within a week, two at the most, with religious text, and or 'items' conformable to their faith, along with tablet accessibility." *Id*. This "places a 'substantial burden' by not being allowed to study, fellowship, worship, and spend time in the presence of Yahweh." *Id*.

While "many believe Hebrewism, Judaism, Christianity are similar and or one and the same, that belief is extraordinarily to the contrary, though, Judaism and Christianity stem from Hebrewism, they are distant (sic) the same moment, and should not be in the same 'catchment,' for the Hebrew scripture is the final authority of [Hebrew's] life." *Id*. at ¶4. The "scriptures are first and foremost," because their "lives revolve around the word of Yahweh." *Id*. "Judaism is different from the ancient Hebraic religion for its doctrine is derived by rabbinic sources and teachings

of the Talmud along with long-standing tradition that go against the Torah and its commands, by taking the name Yahweh in vain by considering his name worthless, of no real value, ineffable, while Hebrews highly esteem his name." *Id*.

Hebrews "love believe trust and rely on the memorial names of covenant as the scriptures instruct us to knowing that whosoever shall call on the name of Yahweh shall be saved (Job 2:32, Acts: 2:21, Romans 10:13) neither is the salvation in any other for there is none other name under heaven given among men, whereby we must be saves (Acts 4:12)." ECF Doc. 9 at ¶4.  Additionally, "Christians go against the commanded seventh day sabbath, commanded feast days of Yahweh by accepting Sunday as their sabbath holy day, along with many other idolatrous pagan holidays, and heathen practices they have adopted through Greek and Latin influence of their many pagan deities, especially by accepting [Hellenized] names of replacement of Yahweh the father and his son Yaashua." *Id*.  "Titles and names such as Jehovah, Lord, God, and Jesus . . . are offensive to the Hebrew and considered blasphemy." *Id*.  Thus, Hebrewism "should not be placed in same 'catchment.'" *Id*.

After Plaintiff's initial request for Hebrew text, #1418556662, the "response was my records indicate I gave you a King James Bible." ECF Doc. 9 at ¶5. Defendant Chaplain Benjamin visited Plaintiff "the next day or so" and they "discussed [Plaintiff's] faith in which he informed [Plaintiff] he was aware of and familiar with the Hebrew faith concerning the sacred names of Yahweh the father

and his son Yaashua, and the error . . . was cleared up. . ." *Id*. It was also "made clear upon requests #141853672 that I received reading glasses and not a bible, for I made it known to him that day that I would never receive that text for it goes against everything I believe and stand for and his response was 'I understand, I'll order you the text that corresponds to your faith.'" *Id*.

About a week later, on October 7, 2021, Plaintiff submitted another request, #144712452, "to check status of order," and "he insured(sic) [Plaintiff] it was, and he was waiting for the shipment to come in." *Id*. at ¶5. Plaintiff "made weekly checks," October 14, 2021 (#145664012); October 20, 2021 (#146476512), always with the same response 'be patient' the order hasn't came in yet." *Id*. Though Plaintiff "was severely inconvenien[ced,] I waited patiently for him and confident he would do what he said and or act in accordance to policy, which was a mistake on my behalf, for [Plaintiff] was 'substantially burdened' by not being able to commune, study, worship or receiving strength through" the text." *Id*.

On November 3, 2021, Plaintiff "checked status again, #148435502, and his response was the same." ECF Doc. 9 at ¶5. Finally, Defendant Chaplain Benjamin entered Plaintiff's dorm "like he does weekly with text, teachings, and religious items for other faiths," and Plaintiff "asked him about my Hebraic text and he wouldn't answer me, then finally, I asked again and he said, 'I'll find you something.'" *Id*. Plaintiff stated "what about text you ordered? He wouldn't answer

and exited the dorm saying 'I'm (sic) get with you,' and I was devastated for I
realized that I been lied to and discriminated against the whole time for the faith I
proclaim, 'Hebrew.'" *Id.*

"So, [Plaintiff] sent another request on November 8, 2021, #148816812,
asking about ordered text, and his response was 'I don't know what to tell you, we
can't give you what we don't have, but feel free to contact the Chief or
Commander.'" ECF Doc. 9 at ¶5. "Chaplain Benjamin by deliberate indifference
and discrimination to the Hebrew Faith denied my right to free exercise under the
First Amendment and under RLUIPA as well as the Equal Protection Clause of the
Fourteenth Amendment denied my right to commune, fellowship, pursue, and study
the living word Yahweh, 'substantially burdened' me by not allowing me to spend
time with Yahweh my Elohim." *Id.*

Plaintiff "submitted grievances yet to no avail (#143654702, #148320772,
#148155402, #158465632, #14266062, #148819602), which were not answered, or
even opened . . ." *Id.* "[F]inally on November 28, 2021, [Plaintiff] submitted an
Escambia County Corrections Department Statement of Complaint Form #C2021-
031 for the way Chaplain Benjamin discriminated against [him], and the Hebrew
faith for as of today, [Plaintiff has] still been denied that constitutional right." *Id.*
By deliberate indifference and discrimination to the Hebrew faith, Chaplain
Benjamin acted against the U.S. Constitution and "Administrative Order and policy

concerning faith based programs and services that was issued October 22, 2021, had

a revision date of October 22, 2021 and effective November 22, 2021, approved by

Williams R. Powell . . . on October 21, 2021, E.C.C.D.-IP007 (5.C.), Chaplains will

ensure equal states, representation, and protection for 'all faiths,' a right [Plaintiff

has] been denied by religious discrimination and deliberate indifference to the

Hebrew faith . . ." ECF Doc. 9 at ¶5.

"Throughout November and December 2021, [Plaintiff's] grievances were

never answered opened or responded," until "finally on about January 3, 2022,

[Plaintiff] asked Chaplain Benjamin why he continued to lie, ignore requests,

grievances, etc, and discriminate . . . for almost four months now, while other faiths

enjoy their text, and or tablet leisure, yet, nothing for the Hebrews." *Id*. "Finally,

on January 6, 2022" Plaintiff and Chaplain Benjamin "talked about why [Plaintiff]

never received [his] text or the supposedly one he had ordered in September." *Id*.

Chaplain Benjamin's response was "I don't have it, but I bought you something else

I want you to read and study, then exited the dorm." *Id*.  Plaintiff later "realized it

was not an Hebraic text or study guide, but a 'Complete Guide to the Bible' by

Stephen M. Miller." *Id*.  This book was "from a Christian standpoint of view, not

an Hebrew!" . . . and was "full of names and titles that are against all [Plaintiff]

believes and a violation of my constitutional right for him to coerce his faith upon

me instead of honouring (sic) my faith Hebrewism." *Id*.

Plaintiff "requested he come get it back, #258464142, and he did as well as an(sic) response to another requests, #158464142, stating 'I'll order you a Hebraic Bible today January 10, 2022.'" ECF Doc. 9 at ¶5.  Chaplain Benjamin saw Plaintiff again on January 19, 2022, and stated "your text came in today, but I'm not going to give it to you, for many people have been inquiring about the Hebrew faith and I'm not going to cause an 'epidemic' in the jail with his faith bibles! I'm not going to do it!"  *Id*.  Chaplain Benjamin "expressed his true feelings and discrimination to the Hebrew faith by deliberate indifference and disregard to policy, the constitution . . . and under RLUPIA" . . . "for I still have not been allowed to worship nor spend time with Yahweh my Elohim unto this day."  *Id*.

On November 28, 2021, Plaintiff submitted a "Statement of Complaint," #C2021-037, to Defendant Jerry Champion, O.I.C. of Internal Affairs on how his rights were violated by Chaplain Reginald Benjamin, and Defendant Champion "responded with the conclusion of 'unfounded' according to his investigation and continues to uphold Chaplain Benjamin in his endeavor to 'substantially burden' Plaintiff's faith . . ." ECF Doc. 9 at ¶6.  Defendant Powell "endorsed Jerry Chaplain and Reginald Benjamin conduct in spite of an Administrative Order he approved concerning faith-based programs and services which 'ensure equal status, representation, and protection for all faiths,' a policy he himself approved and went

against by deliberate indifference and prejudice discrimination of the Hebrew Faith

. . ." ECF Doc. 9 at ¶7.

As relief, Plaintiff wants "the ECBCC along with the Jail to establish and

recognize the Hebrew Faith as a religion like other faiths, and adopt policies in

accordance to it, with text in English and Spanish, with study materials on hand at

all times ready for distribution to those who worship as Hebrews, along with tablet

availability as well to pursue and study our faith along with five million dollars

($5,000,000) for 'religious discrimination.'" *Id*. at 16.

## II.    LEGAL STANDARD

Because Plaintiff is a pre-trial detainee seeking relief against a governmental

entity and governmental employees, proceeding *pro se* and *in forma pauperis*, the

Court is required to review his complaint, identify cognizable claims, and dismiss

the complaint, or any portion thereof, if it "(1) is frivolous, malicious, or fails to state

a claim upon which relief may be granted; or (2) seeks monetary relief from a

defendant who is immune from such relief."  28 U.S.C. §§ 1915(e)(2); 1915A(b).

Dismissals for failure to state a claim are governed by the same standard as

Federal Rule of Civil Procedure 12(b)(6).  *See Mitchell v. Farcass*, 112 F.3d 1483,

1485 (11th Cir. 1997).  To survive dismissal, "a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To state a plausible claim for relief,

plaintiffs must go beyond merely pleading the sheer possibility of unlawful activity

by a defendant; plaintiffs must offer factual content that allows the Court to draw the

reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

Additionally, because Plaintiff is proceeding *pro se*, the undersigned will liberally

construe his allegations. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Bingham

v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

## III.   FAILURE TO EXHAUST

In Plaintiff's original complaint, Plaintiff stated "over a period of 40 days or

more [Plaintiff] sent request and grievances several times requesting Hebrew text."

ECF Doc. 1 at 5.  Plaintiff did not identify the dates for any of those grievances.  In

Plaintiff's amended complaint, Plaintiff identifies the grievances and requests he

submitted, and it is clear from those allegations that Plaintiff did not exhaust the

Jail's administrative procedures before filing the complaint.

Under the PLRA, "No action shall be brought with respect to prison

conditions under section 1983 … by a prisoner … until such administrative remedies

as are available are exhausted." 42 U.S.C. § 1997e(a).  The exhaustion requirement

applies "to all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or

some other wrong." *Porter v. Nussle,* 534 U.S. 516, 524–32 (2002) (citations

omitted).  The purpose of exhaustion is "to eliminate unwarranted interference with

the administration of prisons in order to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Parzyck v. Prison Health Serv., Inc.,* 627 F.3d 1215, 1217 (11th Cir. 2010) (citation omitted).

Although prisoners are not required to plead exhaustion, *Jones v. Bock,* 549 U.S. 199, 216 (2007), where a failure to exhaust is apparent from the face of a complaint, the PLRA requires dismissal. *See Opkala v. Drew,* 248 Fed. Appx. 72, 73 (11th Cir. 2007) (dismissing claims for failure to exhaust where such failure was clear from the face of the complaint); *Bilal v. Wise,* 2010 WL 4668474, at *2 (M.D. Fla. Nov. 9, 2010) (same); *see also Clark v. State of Ga. Pardons and Paroles Bd.,* 915 F.2d 636, 640 n. 2 (11th Cir. 1990) ("When the defense is apparent from the face of the complaint or the court's records, courts need not wait and see if the defense will be asserted in a defensive pleading.").

"[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo,* 548 U.S. 81, 93 (2006). According to the Jail's grievance procedures, proper exhaustion in this case requires the filing of a formal grievance, appeal to the OIC, and appeal to the Commander. *See* https://myescambia.com/our-services/corrections/community-detention, Escambia County Jail Inmate Handbook. Specifically, the Handbook provides that an inmate must file a grievance within 30 days of the date on which the basis for the complaint occurred. A written

response will be provided within 10 days of filing the grievance. *Id.* The inmate

may file an appeal of the written response to the Section OIC or Support Supervisor.

*Id.* A written response to the appeal will be provided within 10 days. *Id.* After

exhausting those procedure, the inmate may submit a written statement to the

Commander or designee within 15 calendar requesting administrative review of the

inmate's grievance and the decision rendered on appeal. *Id.*

Reading Plaintiff's amended complaint liberally, Plaintiff submitted several

requests for Hebrew text to the Chaplain as early as September. According to the

Jail's Inmate Handbook, a request is not the same as a grievance. Requests "are to

be used when requesting services, directing questions, making inquiries, seeking

assistance/information, or appealing a Disciplinary Hearing." *Id.*

Plaintiff also alleges he submitted several grievances. He does not give the

date of those grievances but does identify them by number. Plaintiff contends the

grievances were never responded to or opened. Even accepting that as true, Plaintiff

still must file an appeal. *Bettencourt v. Owens,* 542 F. App'x 730, 734 (11th Cir.

2013) (holding that once time passed for a response to be made to the formal

grievance had expired, plaintiff was required to file an appeal as set forth in the

agency's procedures), *citing Turner v. Burnside,* 541 F.3d 1077, 1084 (11th

Cir.2008).

Indeed, Plaintiff claims he filed an appeal to the OIC by filing a Statement of Claim. The problem is the Statement of Claim was not filed until November 28 – *after* he had already filed the original complaint. Also, even if the Statement of Claim had been filed before the original complaint, Plaintiff did not appeal the OIC's response to the Commander. Thus, it is clear from the face of the complaint Plaintiff did not properly exhaust his claims *before* filing the original complaint. Plaintiff cannot cure that failure by filing another amended complaint. *See Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012) (making clear that a plaintiff must exhaust his administrative remedies *before filing suit* and holding that an amended complaint cannot cure an exhaustion defect: "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint.").

Moreover, Plaintiff's only allegations of misconduct against any of the Defendants occurred on January 6, when the Chaplain allegedly "coerced" him with Christian materials, and January 19, when the Chaplain allegedly told him he would not give him the Hebrew text the Chaplain ordered for him because he did not want to start an "epidemic." Absent those two allegations, the second amended complaint (like the original complaint) contains no facts supporting a First Amendment, RLUIPA, or Equal Protection Claim.

Instead, prior to January 6, Plaintiff admits the Chaplain attempted to provide Plaintiff with Hebrew text and, indeed, ordered a Hebrew bible for him. And, as set forth in the Court's deficiency order, the failure to provide Plaintiff Hebrew text, without more, does not show that Plaintiff was substantially burdened from practicing his chosen religion. *See* Order, ECF Doc. 8 (setting forth elements of claims and defining substantial burden). Plaintiff cannot use conduct that occurred in January to support a complaint filed two months earlier. Regardless, Plaintiff could not have exhausted those claims against the Chaplain because he filed his second amended complaint on January 22 – clearly not enough time for proper exhaustion to have occurred.

Thus, the undersigned recommends this action be dismissed for failure to exhaust. 28 U.S.C. § 1997(e).

## IV.   Plaintiff's Municipal Liability Claims Fail on the Merits

Even if Plaintiff had exhausted his claims, the claims would nonetheless fail on their merits. Because Plaintiff brings only official capacity claims against the individual Defendants, his claims are equivalent to a claim against defendants' employer – here, the ECBCC. *See Farred v. Hicks*, 915 F.2d 1530 (11th Cir. 1990). Thus, to state a claim against Defendants, Plaintiff must allege facts sufficient to show the ECBCC is liable for violating Plaintiff's constitutional rights. *Id*.

As this Court previously instructed Plaintiff, to establish municipal liability under § 1983, he must show (1) "his constitutional rights were violated"; (2) the ECBCC "had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). In other words, a municipality may be held liable only when the execution of a government policy or custom causes the injury. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).

There are several ways of establishing municipal liability under § 1983. A municipality may be liable for an official policy enacted by its legislative body (e.g., an ordinance or resolution passed by a city council). *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 661, 694−95 (1978); *McCusik v. City of Melbourne*, 96 F.3d 478, 483 (11th Cir. 1996). Municipal liability may also attach if final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403–04 (1997); *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 n.11 (11th Cir. 1991). Finally, a municipality may be held liable "on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002).

In the second amended complaint, Plaintiff identifies the ECBCC's "Administrative Order . . . concerning faith-based programs and services, E.C.C.D.-IP007 (5.C.)," as a policy. According to Plaintiff, the policy was issued on October 22, 2021, and became effective November 22, 2021, and was approved by Defendant Powell. ECF Doc. 9 at ¶7. The policy "ensures equal status, representation, and protection for all faiths." *Id.* Plaintiff alleges Defendants "went against" this policy by discriminating against the Hebrew faith—i.e., not providing religious materials for Hebrewism. *Id.* at 5-7. To the extent Plaintiff is relying on the Administrative Order to support his claim, he cannot do so because there is nothing unconstitutional about that policy.

Also, to the extent Plaintiff seeks to hold the ECBCC liable for the conduct of its employees for failing to enforce the Administrative Order, after its effective date, Plaintiff must allege facts to show that either (1) the employees were final decision makers who had knowledge, based on multiple instances of misconduct, that the policy was being ignored, *see Brown*, 520 U.S. at 403–04; *City of Ft. Lauderdale*, 923 F.2d at 1481 n.11, or (2) the failure was based on a known lack of training. *City of Canton, Ohio,* 489 U.S. at 387. Otherwise, as a general matter, "[plaintiff] cannot rely upon the theory of *respondeat superior* to hold the County liable". *See McDowell*, 392 F.3d at 1289.

Here, there are no facts showing that either the Chaplain or Champion was a final decisionmaker.  To the contrary, the Chaplain told Plaintiff to go to the Commander with his complaints.  Also, Champion's role in this matter was as the OIC investigator.  Plaintiff, however, alleges that Powell "approved" the Administrative Order.  Thus, reading Plaintiff's second amended complaint liberally, Plaintiff may be alleging Powell was a final decisionmaker.

The problem is Plaintiff has not alleged any facts to show that Powell's failure to enforce the Administrative Order "reflects 'deliberate' or 'conscious' choice by the municipality" such that the failure can be "properly thought of as an actionable city 'policy'".  *City of Canton, Ohio*, 489 U.S. at 379.  In other words, Plaintiff has not alleged any facts showing Powell or the ECBCC knew the Administrative Order was widely not being enforced such that their conduct amounted to an acceptance or ratification of a longstanding practice that constitutes an institutional policy or custom.  Plaintiff has also not alleged any facts to show that the failure to enforce the Administrative Order was based on a known lack of training.

Instead, Plaintiff's allegations are premised solely on the Chaplain's denial of Hebrew text to him.  Even if the ECBCC or Powell knew about Plaintiff's failure to get Hebrew text, that would not be enough.  It is well established that "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability' against a municipality." *Craig v. Floyd County, Ga.*, 643 F.3d 1306, 1310 (11th Cir.

2011) (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24, (1985) (plurality opinion)); *Yates v. Cobb County Sch. Dist.*, 687 Fed. Appx. 866, 873 (11th Cir. 2017) (unpublished) (An isolated incident will not suffice; rather, a pattern of similar constitutional violations ordinarily is necessary to show that policymaking officials knew of, but failed to stop, the practice).

Thus, Plaintiff has not stated a claim against the Defendants in their official capacities or against the ECBCC.  Accordingly, even if Plaintiff had exhausted these claims, they fail as a matter of law.

## V.    CONCLUSION

It is respectfully RECOMMENDED:

1.      Plaintiff's second amended complaint (ECF Doc. 9) be dismissed for failure to exhaust and for failing to state a claim.

2.      The clerk be directed to close the file.

Done in Pensacola, Florida, this 4th day of March 2022.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  An objecting party must serve a copy of its objections

upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.